### T. J. FREEMAN, RECEIVER, v. TOM SHAW.

Decided February 17, 1910.

**1.—Master and Servant—Railway—Operating Car.**

Section hands distributing ties along the track by loading them upon a push car, shoving same along the track and throwing off ties therefrom at points where they were needed, were engaged in operating a car within the meaning of the Act of June 18, 1897. (Laws Twenty-Fifth Leg., Called Session, p. 14). The company was liable for injury to one of such employees by the negligence of another in causing a tie to be thrown upon him in such unloading. It was not necessary that the car be moving while the tie was being thrown off to render the injury one received in its operation.

**2.—Same—Cases Distinguished.**

Lakey v. Texas & P. Ry. Co., 33 Texas Civ. App., 44; Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 518; Gulf, C. & S. F. Ry. Co. v. Johnson, 47 Texas Civ. App., 74; Texarkana & F. L. S. Ry. Co. v. Anderson, 102 Texas 402, distinguished; and Seery v. Gulf, C. & S. F. Ry. Co., 34 Texas Civ. App., 89; Texas & P. Ry. Co. v. Webb, 31 Texas Civ. App., 498, and other cases followed.

**3.—Charge—Negligence in Employing.**

Requested instruction on effect of knowledge by injured employee of the negligent character of the coservant by whose fault he was injured held properly refused because embraced in the charge given.

Appeal from the District Court of Cherokee County. Tried below before Hon. James I. Perkins.

*King & Morris,* for appellant.—Regardless of whether appellee and his coemployes were operating a pushcar at the time of the injury, and whether Jones was negligent or not, it was error for the court to submit this issue to the jury as submitted, because Jones was a fellow servant of appellee. Granting that the pushcar was moving at the time and that they were at said time operating a pushcar, it is apparent that the operation of the car was not the proximate cause of the injury, and in no manner connected therewith, but that the cause of the injury was a separate and distinct act, independent of the operation of the car. Texarkana & Ft. S. Ry. Co. v. Anderson, 102 Texas, 402; Gulf, C. & S. F. Ry. Co. v. Johnson, 47 Texas Civ. App., 74; Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 518; Galveston, H. & N. Ry. Co. v. Cochran, 49 Texas Civ. App., 591; Texas & N. O. R. Co. v. Walton, 47 Texas Civ. App., 43; Indianapolis Traction Co. v. Kinney, 85 N. E., 954.

*Box & Watkins,* for appellee.—Since plaintiff and Jones were operating a car they were not fellow servants. Sayles' Ann. Civ. Stats., art. 4560f; Texarkana & Ft. S. Ry. Co. v. Anderson, 102 Texas, 402; St. Louis S. W. Ry. Co. v. Thornton, 46 Texas Civ. App., 649; Missouri, K. & T. Ry. Co. v. Smith, 45 Texas Civ. App., 128; Seery v. Gulf, C. & S. F. Ry. Co., 34 Texas Civ. App., 89; Texas & P. Ry. Co. v. Webb, 31 Texas Civ. App., 498; St. Louis & S. F. Ry. Co. v. Smith, 90 S. W., 926; Texas & N. O. Ry. Co. v. McCraw, 43 Texas Civ. App., 247; Texas & N. O. Ry. Co. v. Walton, 47 Texas Civ. App., 143.

Where the testimony showed that a servant was injured while working in connection with a pushcar, and was assisting in the movements of same, it was not error for the court to refuse a requested charge instructing the jury to return a verdict against the injured servant, if they believed that at the very time the injury occurred the car was standing still. Texas & N. O. R. Co. v. Walton, 47 Texas Civ. App., 143; St. Louis & S. F. Ry. Co. v. Smith, 90 S. W., 926; St. Louis S. W. Ry. Co. v. Thornton, 46 Texas Civ. App., 649.

LEVY, ASSOCIATE JUSTICE.—By his petition appellee claims that while he and the men engaged with him were distributing ties by means of a pushcar, and while they were operating said car, and while it was in motion, one of appellee's coemployes, Primus Jones, who was assisting in the operation of said car, and in distributing said ties, negligently threw and permitted to fall on appellee one of the ties from said car, causing his injury; and further, it was alleged that appellant was negligent in employing and retaining in employ-

ment of Primus Jones when said appellant knew or by ordinary care could have known that Primus Jones was incompetent, inexperienced and negligent, and that this negligence was the proximate cause of appellee's injury. Appellant answered by general denial, and that Primus Jones was a fellow servant, and the appellee's injury was occasioned by the negligence of a fellow servant, assumed risk, and contributory negligence. The trial was before a jury, and in accordance with their verdict judgment was rendered in favor of appellee.

Appellee and one Primus Jones and four others constituted a crew under their foreman, Hale, in the employ of appellant. Their duty was to take crossties from the tie yard at Matkin Hill and to distribute them over appellant's railroad track by propelling a pushcar on which the ties were transported. The ties weighed about 200 pounds each. This crew were not engaged in placing the ties in the track, but were only distributing them along the trackway. There was another crew near by whose duty is was to place the ties in the track. Appellant's crew would load twenty-five or thirty ties each time on the car, and with their hands push the car along slowly on the track, throwing off the ties at indicated places. It was a standing order of their foreman, and the practice of the men while unloading ties, to keep the car continually in motion in order to save time. The foreman would walk in front of the slow-moving car, and with an axe hack all rotten ties in the track. The crew with the car following the foreman would jerk off ties from the car at these places indicated by the marks with the foreman's axe. It was a part of the appellee's duty to push the car and assist in starting and stopping it whenever necessary, which was usually done by pulling on or pushing against the car. This car was propelled by being pushed by hand along the track. Appellee, immediately preceding the time he was injured, had "snatched," as he expressed it, a tie off the car. The end of the tie he jerked off failed to clear the track, falling slightly under the front end of the car near the rail. Appellee immediately started to stoop over to move the end of this tie away from the track, when Primus Jones, a member of the crew on the same side of the car, but behind appellee, by jumping upon the end of another tie on the car to "break the tie down," caused the end of this other tie resting on the car, while the car was moving, to slide and become overbalanced and fall upon appellee, crushing both bones in his leg. The moving of the car not only had a tendency to cause this tie to fall, but brought the end of the tie up in close proximity to appellee. As one witness says, it "brought the tie on appellee." Appellee at the time occupied a stooping position at the front end of the car. The evidence as to whether the car was in motion at the time of the injury is conflicting, but the evidence is sufficient to sustain the finding of the jury that the car was at the time of the injury in motion. At the time appellee was injured he and the men with him had pushed the car some 300 yards from the tie yard where it had been loaded, having previously on the same day distributed a number of carloads of ties in the manner stated.

The evidence is conclusive that Primus Jones was an incompetent

and unfit and careless person for the work. There is ample evidence to support the finding that appellant's foreman, who had the power of hire and discharge, knew of such incompetency and unfitness and carelessness of Primus Jones before the injury happened. There is evidence that presented an issue of fact as to whether appellee knew of the incompetency of Primus Jones. Appellee had been working in the crew only two weeks at the time of his injury, and Primus Jones had been working there about six months. The findings of the jury on all issues of the case being adverse to appellant, and their findings being supported by sufficient evidence, we have adopted such findings.

*After Stating the Case.*—The court charged the jury that if they found from the evidence that the appellant and the crew of which he was a member "were engaged in distributing ties over a portion of the track of said railroad, and that while plaintiff was assisting in distributing ties he and the section crew with him, including one Primus Jones, were engaged as employes of defendant in operating a pushcar, and you further believe from the evidence that while plaintiff and the said Primus Jones were engaged in operating said car, if you find they were so engaged, the said Primus Jones negligently caused or permitted to fall on plaintiff's left leg one of the ties which they were distributing, and that by reason of the negligence of said Primus Jones, if he was negligent in permitting or causing said tie to fall, you find plaintiff's left leg was injured without fault on his part, then you will find for plaintiff, and assess his damages, if any, as hereinafter directed." By its first assignment of error the appellant challenges this charge as erroneous in allowing a recovery for the negligence of Primus Jones, because Primus Jones at the time of the injury was a fellow servant of appellee's. The contention is predicated upon the proposition that, granting that the pushcar was moving at the time and that they were at said time operating a pushcar, it is apparent in the evidence that the operation of the car was not the proximate cause of the injury, and in no manner connected therewith, but the cause of the injury was a separate and distinct act independent of the operation of the car. Under the statute if appellee were injured while engaged in the work of operating the car by reason of the negligence of any other servant or employe, the fact that such persons were fellow servants with each other does not impair or destroy liability. It has been ruled that a pushcar, or handcar, as the instant one, is a car within the meaning of the statute. Perez v. San Antonio & A. P. Ry. Co., 28 Texas Civ. App., 255, 67 S. W., 137; Texas & P. Ry. Co. v. Webb, 31 Texas Civ. App., 498, 72 S. W., 1044; Seery v. Gulf, C. & S. F. Ry. Co., 34 Texas Civ. App., 89, 77 S. W., 950; Houston & T. C. Ry. Co. v. Jennings, 36 Texas Civ. App., 375, 81 S. W., 823. The phrase "while engaged in the work of operating" has been construed to mean during the time such employes may be engaged in the act of doing those things which constitute the operating of the car. Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 513, 80 S. W., 229. The term "operation" has been ruled in the Webb case, supra, to "com-

prehend something more than the mere running of cars, locomotives and trains of a railway company." In the case of St. Louis S. W. Ry. Co. v. Thornton, 46 Texas Civ. App., 649, 103 S. W., 437, the term was defined as including within its meaning "some work in the line of his duty directly connected with or incident to the movement and operation of a car, locomotive or train." This court in Texarkana & Ft. S. Ry. Co. v. Anderson, 111 S. W., 173, uses this language: "We do not incline to so construe this Act as to include a work not necessarily connected with or incidental to the movement and operation of the car, locomotive or train." The interpretation given the statute has made the law seem clear and easily understood. The difficulty has been in the cases in applying the law to the particular facts of the given case. In the cases of Lakey v. Texas & P. Ry. Co., 33 Texas Civ. App., 44, 75 S. W., 566; Gulf, C. & S. F. Ry. Co. v. Howard, 97 Texas, 518, 80 S. W., 229; Gulf, C. & S. F. Ry. Co. v. Johnson, 47 Texas Civ. App., 74, 103 S. W., 447; Texarkana & Ft. S. Ry. Co. v. Anderson, 102 Texas, 402, 118 S. W., 127, a recovery was denied upon the ground that the injury did not occur while operating a car. These cases are relied on by appellant. These cases are briefly reviewed because the features of the instant case make a clear distinguishment between such cases and the present one. In the Lakey case it was simply his duty to assist in taking the steel from the car and laying it in the track. The car at the time was standing still, and he had nothing to do with transporting the car from the point where it was loaded. While simply performing the duty of unloading, he was injured by the fall of the rail, due to the fault of his colaborer. In the Howard case he was not injured upon the locomotive, or in working in connection with it. In the Johnson case he was performing the duty of a section hand as such, and was injured by negligence of a colaborer in dropping the rail they were carrying to load on a pushcar which they had used only one time. In the Anderson case he was hurt, not while in the act of unloading rails from a car, but while carrying the rail from the car to put it in place upon the ground, which was strictly in the performance of his section duties, and the car had nothing to do with his injury. In the precise facts of the instant case it appears that appellee and his crew were engaged in transporting ties on a pushcar from the tie yard and distributing them along the track, and were to perform no other duty. Another crew, and not this crew, was placing them in the track. Appellee's duty was to assist in pushing and stopping the car as necessary to discharge its load at intervals along the track. By order of the foreman, the car was kept moving and the unloading was done while the car was kept moving. The car was thus operated and in motion at the time Primus Jones, a colaborer, negligently caused a tie on the car to overbalance and slide on appellee and injure him. The operating of the car, it is shown, not only had a tendency to cause the tie to fall, but brought the end of the same up toward appellee and in close proximity to him. At the time of the injury appellee had taken a tie off the moving car, and because it failed to clear the track he immediately stooped over to move the end of the same off the track, when Primus

Jones jumped on the end of another tie on the car, causing it to become overbalanced and slide on to appellee. If in the record it must be ruled as a matter of law that appellee at the time of his injury by the negligence of Primus Jones was not engaged in the work of operating the car, then it would follow that the charge complained of was error. We do not think it could be so ruled. The facts, we think, bring the case within the terms and the principle of the law. The fact is clear that at the time of his injury the appellee was engaged in working directly and immediately in connection with the car and in the performance of his duty in respect thereto. It could not be said from the record that his injuries resulted from causes disconnected with and ·not necessarily incident to or arising out of the operation of the car. The facts show that the moving car lent material assistance to cause the tie negligently overbalanced by Jones to fall on appellee. As one ·witness said, the slowly moving car "brought the tie on" appellee. The benefits of the statute are for those employes who are in the course of their employment exposed to the particular dangers incident to the use and operation of cars, and whose injuries are caused thereby. Appellee was in a situation, in the performance of his necessary duties of operating the car, which, in the evidence, rendered it "difficult to protect oneself against the negligence of others." The danger he was exposed to in such operation of the car was a hazard incident to the use and operation of the car, within the purpose of the statute. We think the facts of this case bring it within the ruling in the following cases: Seery v. Gulf, C. & S. F. Ry. Co., supra; Texas & P. Ry. Co. v. Webb, supra; St. Louis & S. F. Ry. Co. v. Smith, 90 S. W., 926; Texas & N. O. Ry. Co. v. McCraw, 43 Texas Civ. App., 247, 95 S. W., 82; Missouri, K. & T. Ry. Co. v. Smith, 45 Texas Civ. App., 128, 99 S. W., 743; St. Louis S. W. Ry. Co. v. Thornton, 46 Texas Civ. App., 649, 103 S. W., 437; Texas & N. O. Ry. Co. v. Walton, 47 Texas Civ. App., 43, 104 S. W., 415; Houston & T. C. Ry. Co. v. Jennings, supra; Lodwick L. Co. v. Mounce, 46 Texas Civ. App., 230, 102 S. W., 142. In each case the injury was caused by the negligence of a colaborer and fellow servant. Because the injury was received while doing some work necessarily incident and pertaining to the car, it was ruled that they were within the terms of the statute operating a car. The assignment is overruled.

By its second assignment appellant complains of the refusal of the court to give a special charge. The special charge was to the effect that if the appellee knew that Primus Jones was incompetent and unfit and careless in the performance of his work, and after knowing the fact engaged in the work with Primus Jones, he, as a matter of law, assumed all the risk of such on the part of Jones. There was no error, because the court in its main charge affirmatively and fully instructed the jury in this respect, and authorized a verdict in favor of appellant upon favorable finding by the jury. The court charged, "But in this connection you are instructed that if you find that plaintiff knew of the negligent character and incompetency of the said Primus Jones to perform said labor, or if you find that in the discharge of his duty plaintiff must necessarily have known of said neg-

ligence or incompetency of the said Primus Jones, if you find he was negligent and incompetent to perform said labor, you will find for defendant on this issue."

By its third assignment the appellant complains of the refusal of the court to give the following special charge: "If you believe from the evidence that the defendant exercised ordinary care in the employment and retention of Primus Jones, and that said Tom Shaw was injured while the pushcar was standing, then it is your duty, without regard to any other facts in the case, to return a verdict for the defendant." The contention of appellant is that he was entitled to have the special charge as worded given because it grouped certain evidence in the case together and was the law of the case. We do not think there was error in refusing this charge as presented. The charge as requested, without any limitation or restriction whatever, made the moving of the car at the very moment appellee was injured the test of whether he was injured in operating the car. To say as a matter of law that because a car is standing still at the moment, and not moving, it is not being operated, is too restrictive. In the Howard case, supra, the court said: "If Howard had been upon the locomotive, or had been at work in connection with it for the purpose of moving it, the case would come within the terms of the statute." The Walton case, supra, was where an engineer in charge of an engine was engaged in oiling the engine, and the fireman was filling the tank with water after the engine had been stopped; and it was there held, and approved by the Supreme Court, that they were engaged in operating the engine. The case of Smith, supra, was where a brakeman was injured while lighting a lamp in the caboose before the train was made up, and while the caboose was standing still it was hit by a collision with another train; and it was held that Smith was engaged in operating the train. In this latter case it was stated: "It is immaterial as affecting the question under consideration that the work was performed in a caboose before said caboose was attached to the train." In the case of Thornton, supra, is the language: "The view that the protection of this statute extends and can be invoked only by those employes of a railroad company who are actually engaged in the manipulation of the engine, and directing the movements of the cars, or train, is too restrictive."

The judgment was ordered affirmed.

*Affirmed.*

(Willson, C. J., not sitting.)
Writ of error refused.